UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA SIEGEL BELANGER and             *
DEVORA C. KAISER,                    *
                                     *
        Plaintiffs,                  *
                                     *
        v.                           *          Civil Action No. 17-cv-10087-ADB
                                     *
MARSHA V. KAZAROSIAN, et al.,        *
                                     *
        Defendants.                  *

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

        Lisa Siegel Belanger and Devora Kaiser ("Plaintiffs"), two daughters of Marvin H. Siegel

("Siegel"), have filed this emergency action against various defendants involved in their father's

estate planning and medical care, including Marsha Kazarosian;[1] Brian Cuffe;[2] Thomas Barbar;[3]

Whittier Health Network, Inc. (d/b/a "Whittier Pavilion"); Beverly Hospital (a/k/a Northeast

Hospital Corp.); Merrimack Valley Hospital (d/b/a Steward Family Hospital, Inc.); Holy Family

Hospital, Inc. (a/k/a TAS-CHFH, Inc.); Robert Portney; Spencer Amesbury; Ping Cui; Janice

Funk;[4] and Kenney Enterprises, LLC (d/b/a "Right At Home") (collectively, "Defendants").

[ECF No. 1].

        Plaintiffs seek temporary restraining orders against Defendants Kazarosian, Cuffe,

---

[1] Kazarosian is sued "in her capacity as private counsel" to Siegel. [ECF No. 1 at 1]. Plaintiffs
also appear to name the law firm of Kazarosian Costello LLP as a defendant in this action. Id.
[2] Cuffe is sued "in his capacity as court appointed guardian" of Siegel. Id.
[3] Barbar is sued "in his capacity as private legal counsel" to Cuffe. Id. Plaintiffs also appear to
name the law firm of Deutsch Williams Brooks Derensis & Holland, P.C. ("Deutsch Williams")
as a defendant in this action. Id.
[4] Funk is sued "in her capacity as staff of Whittier Rehab Hospital and her private business
known as Neuroeducation, Inc." Id.

Barbar, Kazarosian Costello LLP, Deutsch Williams, and Right At Home; multiple preliminary injunctions against various defendants; orders compelling production of documents from various defendants; an independent medical examination of Siegel; and declaratory relief.[5] [ECF No. 1 at 95–98]. Currently pending before this Court are motions to dismiss filed by Cuffe [ECF No. 21], Barbar [ECF No. 23], Kazarosian [ECF No. 24], Whittier Pavilion [ECF No. 29], and Right At Home [ECF No. 34], as well as a motion to strike filed by Kazarosian [ECF No. 27].

For the reasons explained below, the motions to dismiss filed by Cuffe [ECF No. 21], Barbar [ECF No. 23], Kazarosian [ECF No. 24], Whittier Pavilion [ECF No. 29], and Right At Home [ECF No. 34] are <u>GRANTED</u>. Kazarosian's motion to strike [ECF No. 27] is <u>GRANTED in part</u>. Accordingly, the Court <u>DENIES</u> Plaintiffs' requests for temporary restraining orders and preliminary injunctions, and <u>DISMISSES</u> the requests for declaratory relief. As there are no remaining grounds for relief, this action is <u>DISMISSED</u> in its entirety.

## I.     BACKGROUND

At the motion to dismiss stage, the Court accepts as true all well-pleaded facts, analyzes those facts in the light most hospitable to the Plaintiffs' theory, and draws all reasonable inferences from those facts in favor of the Plaintiffs. <u>United States ex rel. Hutcheson v. Blackstone Med., Inc.</u>, 647 F.3d 377, 383 (1st Cir. 2011). The following facts are taken from Plaintiffs' Complaint for Emergency & Preliminary Injunctive Relief. [ECF No. 1].

On February 12, 2015, Plaintiffs initiated a separate action in this Court under case number 15-cv-10198-ADB (the "Prior Action"). On January 19, 2017, while motions to dismiss were pending in the Prior Action, Plaintiffs initiated the instant action. [ECF No. 1]. On March

---

[5] The Court has difficulty discerning any stand-alone causes of action raised by Plaintiffs' Complaint.

28, 2017, this Court issued a memorandum and order dismissing the Prior Action. <u>See</u>

Memorandum and Order, <u>Belanger v. BNY Mellon Asset Mgmt., LLC</u>, No. 15-cv-10198-ADB

(D. Mass. Mar. 28, 2017). By way of reference, this Court adopts the factual background

summarized in the Prior Action's memorandum and order.[6]

Plaintiffs Lisa Siegel Belanger ("Belanger") and Devora Kaiser ("Kaiser") are two of

Siegel's three biological daughters. In the Prior Action, Plaintiffs sought monetary damages for

various harms alleged to have been sustained by them in relation to the treatment of Siegel. Here,

again related to Defendants' treatment of Siegel, Plaintiffs allege that irreparable harm will be

suffered if emergency equitable relief is not granted.[7]

On July 14, 2016, Cuffe, as guardian of Siegel, appeared in the Essex Probate & Family

Court in Massachusetts ("Probate Court") where he filed a Report of Monitor. [ECF No. 1 ¶¶

156, 158]. Cuffe represented that Robert Portney, who had been Siegel's exclusive treating

psychologist since January 2012, was no longer willing to treat Siegel due to Belanger naming

him in a lawsuit filed in federal court. <u>Id.</u> ¶¶ 155, 159. Cuffe went on to state that he had

contacted at least ten area psychologists, none of whom were willing to treat Siegel. <u>Id.</u> ¶ 159.

Due to Portney's termination of care, Siegel was being taken off anti-psychotic medications,

with his last dose scheduled for July 31, 2016. <u>Id.</u> ¶ 157–58.

On October 23, 2016, Kaiser visited Siegel in his home and he seemed well. <u>Id.</u> ¶ 182.

On November 19, 2016, however, Kazarosian, as counsel for Siegel, emailed Plaintiffs' probate

attorney, Allan Knowles, to say that Siegel had been hospitalized at Merrimack Valley Hospital

---

[6] The Court notes that the instant action could have and likely should have been brought as part
of the Prior Action.

[7] To the extent Plaintiffs have made factual allegations pre-dating the Prior Action, the Court has
considered those allegations and will discuss them only to the extent necessary to consider the
motions currently pending before the Court.

the previous day out of an abundance of caution after one of his aides thought she noticed a twitch and weakness in his right hand.[8] Id. ¶¶ 182, 186. Kazarosian represented that the situation was not an emergency and that Siegel's heart rate, and blood pressure were normal and his appetite and ambulation were unaffected. Id. ¶ 187. Kazarosian went on to state that it was her understanding that the medical staff had detected no issues and that Siegel could be released the following day. Id. ¶ 188. On November 21, 2016, Kazarosian sent a follow-up email informing Plaintiffs that Siegel had been discharged on November 20, 2016, and was back home. Id. ¶ 190; [ECF No. 1-105].

On November 22, 2016, Kazarosian emailed Plaintiffs' probate attorney again to advise that Siegel had been admitted to Beverly Hospital "for what appears to be the same concerns that were raised this weekend." [ECF No. 1 ¶ 192; ECF No. 1-107]. On November 30, 2016, Barbar, as counsel for Cuffe, twice emailed Plaintiffs' probate attorney with updates on Siegel's medical condition. [ECF Nos. 1-11, 1-108]. In his first email, Barbar indicated that Siegel would remain at Beverly Hospital for one more night and that the "tests that were conducted . . . came back negative." [ECF No. 1-108]. Less than two minutes later, Barbar sent a second email indicating that he had received further information from Siegel's guardian who informed him that Siegel had been "evaluated at Beverly Hospital for his progressive dementia with concerns for a mild stroke." [ECF No. 1-11]. The tests had indicated that Siegel had progressive dementia, needed two care givers to assist with ambulation, and was non-responsive to directions or questions. Id. Further, Siegel's diet was being "changed to ground foods and . . . liquids," and the medical providers were recommending that Siegel be prepared for palliative care or hospice. Id. Siegel

---

[8] Contrary to Plaintiffs' assertion, Exhibit 67 to the Complaint does not contain a copy of the November 19, 2016 email. See [ECF No. 1-98]. Rather, Exhibit 67 is a copy of a November 21, 2016 email from Kazarosian to Plaintiffs' probate attorney. Id.

was to be discharged the following day. Id.

Plaintiffs allege that the report provided by Barbar in his November 30, 2016 emails conflicted with Kaiser's personal communications with Siegel between August 2016 and October 23, 2016. [ECF No. 1 ¶ 167]. Further, Kaiser visited Siegel while he was being treated at Beverly Hospital (between November 22, 2016 and December 1, 2016), and "observed [his] independent use of a spoon to feed himself." Id. ¶ 171. Plaintiffs concede that Siegel's "verbal interaction was much lessened" while in Beverly Hospital, but assert that Siegel was able to verbally interact with Kaiser. Id. ¶ 172. Additionally, Kaiser visited Siegel "more than a handful of times" after his release from Beverly Hospital and observed that his verbal interaction had increased and his motor skills had improved. Id. ¶¶ 173–76.

Plaintiffs allege that Siegel's hospitalization on November 18, 2016 was the result of Defendants' ulterior motives, including their "intentions to liquidate [Siegel's] estate." Id. ¶¶ 179, 182. In support of this allegation, Plaintiffs point to a series of events occurring between August 17, 2011, and September 25, 2015.[9] Id. ¶¶ 178–81. Plaintiffs make a further allegation, seemingly in support of Defendants' ill motives in hospitalizing Siegel, that the "evident triggering event" causing Siegel to be discharged from Beverly Hospital on December 1, 2016, was a November 28, 2016 letter Belanger wrote to Beverly Hospital's counsel in the Prior Action informing them "of the inexplicable lengthy admission of [Siegel]." Id. ¶ 201. Plaintiffs assert that the November 28, 2016 letter, which was later forwarded to the hospital's legal department, caused Siegel's "sudden discharge" on December 1, 2016 and supports Plaintiff's contention that

---

[9] On September 25, 2015, Plaintiffs, Kazarosian, and Barbar appeared in Probate Court, at which time Kazarosian indicated that the only asset in the Siegel's DSL Trust was his house. [ECF No. 1-95]. The September 25, 2015 hearing is the only event alleged to have occurred after the filing of the Prior Action that evidences Defendants' ill motives for Siegel's most recent hospitalization.

the hospital stay was unwarranted. Id. ¶¶ 203–05.

Plaintiffs initiated this action against Defendants on January 19, 2017. [ECF No. 1]. On January 26, 2017, this Court held a Status Conference [ECF No. 31], following which Defendants Cuffe [ECF No. 21], Barbar [ECF No. 23], Kazarosian [ECF No. 24], Whittier Pavilion [ECF No. 29], and Right At Home [ECF No. 34] filed motions to dismiss. Plaintiffs opposed the motions to dismiss filed by Defendants Cuffe, Barbar, and Kazarosian on February 15, 2017. [ECF No. 36].

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the Plaintiffs' theory, and draw all reasonable inferences from those facts in favor of the Plaintiffs. United States ex rel. Hutcheson, 647 F.3d at 383. In ruling on a motion under Rule 12(b)(6), the Court "must consider the complaint, documents annexed to it, and other materials fairly incorporated within it," which "sometimes includes documents referred to in the complaint but not annexed to it" and "matters that are susceptible to judicial notice." Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 12 (1st Cir. 2004).

Although detailed factual allegations are not required, a pleading must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is

plausible on its face." <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732 F.3d 77, 80 (1st Cir. 2013)

(quoting <u>Twombly</u>, 550 U.S. at 570).

      The First Circuit has noted that "[t]he plausibility standard invites a two-step pavane." <u>Id.</u>

"At the first step, the court 'must separate the complaint's factual allegations (which must be

accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>Id.</u>

(quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step,

the court must determine whether the remaining factual content allows a reasonable inference

that the defendant is liable for the misconduct alleged." <u>Id.</u> (internal quotations and citation

omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must

state a plausible, not a merely conceivable, case for relief." <u>Sepulveda-Villarini v. Dep't of Educ.</u>

<u>of P.R.</u>, 628 F.3d 25, 29 (1st Cir. 2010). "Although evaluating the plausibility of a legal claim

requires the reviewing court to draw on its judicial experience and common sense, the court may

not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of

those facts is improbable." <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011)

(internal quotations and citations omitted).

## III.    DISCUSSION

### a.  Plaintiffs' requests for temporary restraining orders and preliminary injunctions

      Plaintiffs first seek temporary restraining orders prohibiting Kazarosian, Cuffe, Barbar,

Kazarosian Costello LLP, Deutsch Williams, and Right At Home from restricting their access to

and communication with Siegel. [ECF No. 1 at 95, ¶¶ 1–2]. "In evaluating a motion for a

temporary restraining order, the Court considers the same four factors that apply to a motion for

preliminary injunction, that is: the likelihood the movant will succeed on the merits, whether the

movant is likely to suffer irreparable harm in the absence [of] preliminary relief, the balance of

equities, and whether an injunction is in the public interest." Kilmowicz v. Deutsche Bank Nat'l Tr. Co., 192 F. Supp. 3d 251, 253 (D. Mass. 2016) (citing Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)). While the Court must consider all four factors, a movant's failure to demonstrate a likelihood of success on the merits is fatal to a request for a temporary restraining order. Id. (citations omitted).

Plaintiffs argue that their request for a temporary restraining order hinges on their likelihood of success in the Prior Action. See [ECF No. 1 at ¶ 152] (arguing Plaintiffs have established "a substantial likelihood of success on the merits in obtaining declaratory judgment" in the Prior Action); [ECF No. 36 at 6] (arguing the pendency of motions to dismiss in the Prior Action "bolsters Plaintiffs having made a sufficient showing of a likelihood of success on the merits in *that matter* (emphasis added)). However, the Prior Action has been dismissed under Federal Rule of Civil Procedure 12(b)(6). See Memorandum and Order, Belanger v. BNY Mellon, No. 15-cv-10198-ADB (D. Mass. Mar. 28, 2017). Plaintiffs have failed to show a likelihood of success on the merits in this case or the Prior Action, and the requests for temporary restraining orders must be denied.

Plaintiffs also seek preliminary injunctions prohibiting Defendants from restricting their access to and communication with Siegel, their communication with Siegel's medical providers, and with any "third-parties providing any service" to Siegel, and from taking any action in reliance on orders issued by the Probate Court. [ECF No. 1 at 97 ¶ 5]. Because a request for a preliminary injunction is evaluated under the same standard as a temporary restraining order, the Plaintiffs' failure to demonstrate a likelihood of success on the merits is also fatal to the requests

for preliminary injunctions.[10] <u>See</u> <u>Kilmowicz</u>, 192 F. Supp. 3d at 253 (citing <u>Voice of the Arab</u>

<u>World, Inc.</u>, 645 F.3d at 32).

**b.  Belanger's request for declaratory relief regarding the Probate Court Orders**

Belanger also seeks a declaratory judgment that the November 8, 2011 [ECF No. 1-132],

December 12, 2011 [ECF No. 1-62], and January 30, 2012 [ECF No. 1-133] orders of the

Probate Court (collectively the "Probate Court Orders") are "null and void, are of no effect, and

are unauthorized by law."[11] [ECF No. 1 at 97 ¶ 6]. "A court is duty-bound to notice, and act

upon, defects in its subject matter jurisdiction sua sponte." <u>Spooner v. EEN, Inc.</u>, 644 F.3d 62, 67

(1st Cir. 2011) (citing <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004)). This Court has

"original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

---

[10] To the extent Plaintiffs have requested the production of documents and information from various defendants [ECF No. 1 at 95–96 ¶¶ 3(a)–(b)], an independent medical evaluation of Siegel, <u>Id.</u> ¶ 3(c), and payment for an independent medical evaluation, <u>Id.</u> ¶ 3(d), these requests appear to have been made in connection with Plaintiffs' requests for preliminary injunctions. As the requests for preliminary injunctions have been denied, all related requests made in connection therewith are also <u>DENIED</u>.

[11] For context, the Court provides the following summation of the Probate Court Orders. On November 8, 2011, the Probate Court granted an Emergency Motion of Guardian for Temporary Order filed by Cuffe. [ECF No. 1-132]. The order prohibits Belanger or her husband "from in any way interfering with, prohibiting or disrupting access to, communication with, or rendering services to Marvin H. Siegel, by any agent or employee of Right at Home; by Michael Novack, LICSW from Elder Resources; by the Guardian Brian T. Cuffe; or any medical services and/or emergency services personnel." <u>Id.</u> Further, the order also prohibits Belanger or her husband from "attending or transporting . . . Siegel [to] any appointment scheduled for him without the written consent of the Guardian, Brian T. Cuffe." <u>Id.</u> On December 12, 2011, the Probate Court granted a Motion of Temporary Guardian, Brian T. Cuffe, for Temporary Order to Vacate, which ordered Belanger and her husband to vacate Siegel's home and "remain away from the premises until further Order of the [Probate] Court." [ECF No. 1-62]. On January 30, 2012, the Probate Court filed a Judgment on Complaint for Civil Contempt finding Belanger guilty of contempt "for having gained access to her father knowingly using false pretenses and knowingly without the express authorization of the Guardian." [ECF No. 1-133]. The Probate Court ordered that "Belanger is not permitted any access to the Ward, Marvin Siegel, nor shall she be permitted any communication with him either directly, or through another, or by telephone, except by the express written authorization of the Guardian." <u>Id.</u>

United States." 28 U.S.C. § 1331. Where a federal action seeks to attack a "final state-court judgment[]," however, the Supreme Court has exclusive jurisdiction. Lance v. Dennis, 546 U.S. 459, 463 (2006) (citing D.C. Ct. App. v. Feldman, 460 U.S. 462, 482 (1983)); see also 28 U.S.C. § 1257. In what has come to be known as the Rooker-Feldman doctrine, the Supreme Court has held that federal district courts lack jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Lance, 546 U.S. at 464 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)) (internal quotations omitted).

Here, Plaintiffs argue that this Court has jurisdiction over their challenges to the Probate Court Orders as they were obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution. [ECF No. 1 ¶¶ 252–53]. Specifically, Plaintiffs assert that their due process rights were violated when they were denied an opportunity to be heard and present evidence in Probate Court, that the evidence presented by Defendants was insufficient to support the Probate Court Orders, and that the Probate Court judge failed to issue written findings of fact. Id. ¶ 253. This is the precise type of challenge prohibited by the Rooker-Feldman doctrine. See Bickel v. Ginsburg, Nos. 92-1329, 92-1599, 1992 WL 288330, *1 (1st Cir. 1992) (per curiam) (holding the district court lacked subject matter jurisdiction to review probate court orders alleged to have been obtained in violation of due process); see also Lancelloti v. Fay, 909 F.2d 15, 16–17 (1st Cir. 1990) (affirming the district court's holding that it lacked jurisdiction to enjoin state courts from enforcing family court orders). Rather, Belanger's "remedy was to pursue [her] claim of constitutional error within the appellate courts of Massachusetts and, if not successful, to seek further review from the United States Supreme Court." Bickel, 1992 WL

10

288330, at *1. Here, neither party seeks further action in the Probate Court Action on the Probate

Court Orders,[12] and thus the action is deemed to have "ended" for Rooker-Feldman purposes.

See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,

410 F.3d 17, 24 (1st Cir. 2005). Therefore, Plaintiffs' requests for declaratory judgments

regarding the Probate Court orders are dismissed for lack of subject matter jurisdiction.

### c. Plaintiffs' request for declaratory relief regarding Defendants' misconduct

Next, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 declaring that the

actions of Kazarosian, Cuffe, and Barbar constitute misconduct under the Massachusetts Rules of

Professional Conduct. [ECF No. 1 at 97 ¶ 7]. Plaintiffs cite to a series of dealings with the Office

of Bar Counsel as support for their request. Id. at ¶ 23. Defendants respond that Plaintiffs'

request for declaratory relief should be dismissed under Federal Rule of Civil Procedure 12(b)(6)

for "failure to state a claim upon which relief can be granted" because there is no private right of

action to seek a declaration of professional misconduct. This Court agrees. The Massachusetts

Rules of Professional Conduct provide:

> "A violation of a canon of ethics or a disciplinary rule . . . is not
> itself an actionable breach of duty to a client." Fishman v. Brooks,
> 396 Mass. 643, 649, [487 N.E.2d 1377, 1381] (1986). The Rules are
> designed to provide guidance to lawyers and to provide a structure
> for regulating conduct through disciplinary agencies. The fact that a
> Rule is just a basis for a lawyer's self-assessment, or for sanctioning
> a lawyer under the administration of a disciplinary authority, does
> not necessarily mean that an antagonist in a collateral proceeding or

---

[12] Plaintiffs have represented that they have exhausted the appellate process in state court, see
[ECF No. 31 at 36], or it appears that they have simply chosen not to seek further appellate
review, see Belanger v. Cuffe, 464 Mass. 1016 (2013). To the extent that there might be probate
court proceedings still pending, the Court would not have jurisdiction pursuant to the federal
probate exception because Plaintiffs' requested remedy would force this Court to interfere with
the Probate Court's handling of Siegel's estate and care. See Mangieri v. Mangieri, 226 F.3d 1, 2
(1st Cir. 2000); see also In re Whatley, 396 F. Supp. 2d 50, 57 (D. Mass. 2005) ("As a practical
matter, federal courts have little expertise in appointing guardians to handle the financial assets
and medical care of older persons.").

transaction may rely on a violation of a Rule. "As with statutes and regulations, however, if a plaintiff can demonstrate that a disciplinary rule was intended to protect one in his position, a violation of that rule may be some evidence of the attorney's negligence." Id. at 649.

Mass. R. Prof. C. 3:07: Scope.

Because there is no private right of action to seek redress for the misconduct alleged in Plaintiffs' Complaint, the request for declaratory relief must be dismissed. See de Feyter v. FAA, No. 10-cv-358-JL, 2011 WL 1134657, at *4 (D.N.H. Mar. 25, 2011) (holding that "because no private cause of action exists, [plaintiffs'] claim must be dismissed on the merits under Rule 12(b)(6)"); see also Arroyo-Torres v. Ponce Fed. Bank, F.B.S., 918 F.2d 276, 280 (1st Cir. 1990) (finding dismissal warranted under Rule 12(b)(6) where there was no private cause of action).[13]

### d. Kazarosian's motion to strike

Also before the Court is Kazarosian's motion to strike [ECF No. 27] Plaintiffs' status update filed on January 25, 2017 [ECF No. 7]. Plaintiffs' status update includes references to a December 1, 2016 formal written complaint against Kazarosian that Belanger filed with the Office of Bar Counsel, as well as a copy of correspondence she received from the Board of Bar Overseers. [ECF No. 7]. Kazarosian argues the disclosure of this information violates her rights to confidentiality under Supreme Judicial Court ("S.J.C.") Rule 4:01 § 20. [ECF No. 28].

Federal Rule of Civil Procedure 12(f) authorizes this Court to "strike from a pleading . . .

---

[13] Although the Court need not touch on every argument presented by Defendants as grounds for dismissal, it notes the following. Plaintiffs have not sufficiently pleaded any fraud-related claims against the Defendants as required by Federal Rule of Civil Procedure 9(b). See Rodi, 389 F.3d at 15. It also does not appear that Plaintiffs have abided by the requirements set out in Federal Rules of Civil Procedure 8, 9, and 10. Finally, Plaintiffs' alleged constitutional claim is not supported by their cited cases, Santosky v. Kramer, 455 U.S. 745 (1982) and Opinion of the Justices to the Senate, 691 N.E.2d 911 (Mass. 1998), which concerned the interests of *parents* in their relationships with their *children*.

12

any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). S.J.C. Rule 4:01 § 20 provides: "(1) Except as the court shall otherwise order or as otherwise provided in this rule, the Board and the bar counsel shall keep confidential all information involving allegations of misconduct by a lawyer . . . until the occurrence of one of the following events: (a) Submission of a resignation pursuant to section 15 of this rule; (b) Submission of a recommendation that formal discipline be imposed by agreement; (c) Service upon the respondent-lawyer of a petition for discipline instituting formal charges against the lawyer or of a petition seeking to place the lawyer on disability inactive status . . . ." S.J.C. Rule 4:01 § 20.

Nothing in S.J.C. Rule 4:01 § 20 suggests that the individual complainant, Belanger in this case, cannot disclose "information involving allegations of misconduct by a lawyer." Rather, it is only "the Board and the bar counsel" to whom the rule is addressed. Id. Further, S.J.C. Rule 4:01 § 20(4) provides, in relevant part, that "the Board may, upon application of the bar counsel or any affected person and for good cause shown, issue a protective order prohibiting the public disclosure of specific information." Id. at § 20(4). Kazarosian has not provided this Court with a protective order prohibiting Plaintiffs from disclosing information related to the allegations of misconduct. Given the sensitivity of the information, however, Kazarosian's motion to strike is GRANTED in part with respect to sealing the documents, and the Clerk of Court is ordered to seal the filing at issue [ECF No. 7].

IV.     CONCLUSION

For the reasons explained above, Plaintiffs' requests for temporary restraining orders and preliminary injunctions are DENIED, and Plaintiffs' requests for declaratory relief are DISMISSED for lack of subject matter jurisdiction and failure to state a claim. The motions to dismiss filed by Cuffe [ECF No. 21], Barbar [ECF No. 23], Kazarosian [ECF No. 24], Whitter

Pavilion [ECF No. 29], and Right At Home [ECF No. 34] are <u>GRANTED</u>. Kazarosian's motion to strike [ECF No. 27] is <u>GRANTED in part</u>. As there are no remaining grounds for relief, this action is <u>DISMISSED</u>.

**SO ORDERED.**

Dated: March 29, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE